# CASES DETERMINED

# SUPREME COURT OF JUDICATURE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1865.

---

#### GEORGE W. GREGORY v. JOHN THOMSON.

An action of debt cannot be sustained on a collateral promise to pay the debt of another.

---

In debt. On demurrer.

The defendant was bound by deed as surety of the tenant of the plaintiff for the payment of the rent, as it should accrue, upon the lease. The covenant declared upon was in the words following, to wit: "And the said defendant did then and there, in consideration of the letting of said premises as aforesaid by the plaintiff to the said Warner (the tenant), covenant and agree, under his hand and seal with the plaintiff, that if default should at any time be made by the said Warner in the payment of the said rent, that he, the said defendant, would well and truly pay the said rent or any arrears thereof that might remain due unto the said plaintiff."

The first count of the declaration was founded on the above covenant.

166

The defendant demurred.

The demurrer was argued before the CHIEF JUSTICE, and Justices ELMER and VAN DYKE.

For the demurrer, *John P. Vroom.*

Contra, *F. B. Ogden.*

BEASLEY, CHIEF JUSTICE. The promise of the defendant, which is declared on in this case is, that he would pay the debt of the tenant if the tenant should make default in payment; and the only question raised by the pleadings is, whether an action of debt is the proper remedy for the breach of such contract?

I have been unable to find any case in which an action of debt has been sustained on a collateral promise to pay the debt of another.

At a very early period in the English law, this was the form of action provided for all matters in controversy arising out of mere personal contracts. Thus, Reeves, in his History of the Common Law, Vol. 1, p. 159, describing the methods of legal proceeding between the reign of William the Conquerer and that of King John, says: "When they (the parties) were both in court, then it was to be considered how the demand arose. This might be of various kinds, as *ex causa mutui*, upon a borrowing; *ex causa venditionis*, upon a sale; *ex commodato*, upon a lending; *ex locato*, upon an hiring; *ex desposito*, upon a deposit or by some other cause, by which a *debt* arose; for at this time all matters of personal contract were considered as binding only in the light of debts; and the only means of recovery, in a court, was by this action of debt."

In all the above instances it will be noticed that the consideration passed from the party who became the creditor to him who became the debtor, so that the contract of the party receiving such consideration was to pay his own debt and not that of another. Such transactions had no connection, incidentally, with third parties. The *debtor* was he

who received the consideration; he alone owed the debt and this action lay only against him.

Such being the origin of this form of action, it is not diffi-cult to perceive how it was that the doctrine came to prevail that it was not applicable, as a remedy, in case of a breach of promise to pay money which was primarily due from a third party. In the somewhat subtle theory of the times it was deemed that such a promise did not create a debt. The party originally liable remained the debtor; he who made himself surety did not thereby impose upon himself a debt, but a collateral assumption, which could not be enforced by an action of debt.

This distinction was adopted at a remote era and appears ever since to have been uniformly recognized and maintained. Thus, in one of the oldest cases upon the subject, 18 *Ed. III.*, 13, it is said : " If A bought of me certain goods for a certain sum, and B at the same time undertook to pay for them at the day if A did not; if A should not pay for them, debt could not be brought against B, because it would sound in covenant." And again in another case, 9 *Hen. V.*, 14, the law is thus stated : " If C recover £10 against A, and B shall say to C that if he will release the £10 to A he will be his debtor, and accordingly the £10 are released to A, an action of debt will not lie against B, as this sounds in cove-nant." Other cases to the same purpose will be found colla-ted in 3 *Com. Dig.*, tit. *Debt, B.* 1, *p.* 373.

The existence of this ancient rule of law has never been denied, although it has been held that in some instances it has been misapplied. Thus, in an anonymous case reported in *Hardres* 485, and which is frequently referred to, it was held that an action of debt brought by the payee of a bill of exchange against the acceptor, could not be supported, on the ground that the engagement was collateral ; " and that," in the words of the authority, " the custom of merchants does not extend so far as to create a debt; only makes the acceptor *onerabilis* to pay the money." In *Bishop* v. *Young*, 2 *Bos. & P.* 78, Lord Eldon reviews this case and seems to

consider that it rests on solid reasons; and it is also treated with a like respect by Justice Lawrence in *Priddy* v. *Henbvey*, 1 *B. & C.* 674.

I am aware that the decision in Hardres has been over-ruled in this country, but such reversal has not been rested on grounds which at all affect the point now to be elucidated.

In *Raborg* v. *Peyton*, 2 *Wheat.* 385, the Supreme Court of the United States refused to adopt the rule of law in ques-tion in its unlimited application to commercial paper, holding that an action of debt will lie by the payee or endorsee of a bill of exchange against an acceptor, where it is expressed to be for value received. But as the court declared that an acceptance was not a collateral engagement to pay the debt of another, but that, on the contrary, it was an absolute en-gagement to pay the money to the holder of the bill and that the engagements of all the other parties were merely collateral, it is evident that this case is no authority for the hypothesis that debt will lie on a collateral agreement.

The modern English authorities seem to sustain, with one voice, the ancient rule in question. *Chitty, Vol.* 1, *p.* 116, treating of the action of *assumpsit*, says: " Where a simple contract creates a collateral liability, as for the payment of the debt of a third person, debt not being sustainable *as-sumpsit* is the only form of action." To the same effect see the same author, pages 124 and 128. The same rule has been recognized by the courts of New York. *Pierce* v. *Crafts*, 12 *Johns.* 90; *Willmarth* v. *Crawford*, 10 *Wend.* 341. Nor does it at all affect the principle that the engagement sued on is contained in an instrument under seal The question in this form was recently subjected to the criticism of the Court of the Exchequer. In *Randall* v. *Rigby*, 4 *M. & W.* 129, it appeared upon the pleadings that the lands had been con-veyed to the defendant and others, to the use that the plaintiff should receive and take the rents; the covenant sued on was to the effect that the defendant and the other grantees would pay said rents; on these facts the court maintained that such covenant was collateral, and on that account would not

support an action of debt. *Harrison* v. *Matthews*, 10 *M. & W.* 767, was decided on the same principle.

It has not been unnoticed that in *Bullard* v. *Bell*, 1 *Mason* 292, Judge Story has intimated that, in his opinion, it would not be overstraining the old doctrine regulating this form of action, to apply it to all collateral undertakings to pay a sum certain. I confess to an inclination in the same direction, and on this account my examination of the original history of the action has perhaps been more elaborate than would otherwise, from the state of the authorities, have seemed to me requisite. But upon reflection I can see no advantage in extending the form of remedy. The limits of the action, in the nature of things, must be arbitrary; the chief concern being to have those limits definite and stationary. To extend the formula is merely to unsettle its boundaries— a result which would, at least, be attended with the mischief of inconvenience. If the sphere of the action of debt is to be enlarged at this time of day, what legal institute, consisting of a mere mode of proceeding, is to be deemed stable? If this form of action is liable to change so is every other, and the consequence would be that the lines of demarkation between the several forms would soon become so obscure as not to be easily definable. I think the use of the action should be restricted within the confines of the ancient practice.

In my opinion the demurrer should be sustained.

ELMER and VAN DYKE, Justices, concurred.

CITED in *Harrison* v. *Vreeland*, 9 *Vroom* 370.